



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 JAN -4  PM 5: 01

CLERK'S OFFICE
AT BALTIMORE
BY _____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

*Paul A. Riley*
*Assistant United States Attorney*
*Paul.Riley@usdoj.gov*

*Mailing Address:*
*36 S. Charles Street, 4th Floor,*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4959*
*MAIN: 410-209-4800*

December 6, 2018

Katherine Tang Newberger
Senior Litigation Counsel
Office of the Federal Public Defender
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD 21201

Re:   *United States v. Reginald Kelso Ricks*, Criminal No. GLR-18-00392

Dear Ms. Newberger:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Reginald Kelso Ricks (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by December 21, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1. The Defendant agrees to plead guilty to Counts 1 and 2 of the Indictment, which charge the Defendant with Armed Bank Robbery and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c)(1)(A)(ii), respectively. The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about March 18, 2018, in the District of Maryland,

### Count 1 (Armed Bank Robbery)

a. First, the Defendant took money from the presence of another, while that money was in the care or custody of a bank;

Rev. August 2018

b. Second, such taking was by force and violence and intimidation;

c. Third, the deposits of the bank were then insured by the FDIC; and

d. Fourth, during the course of the robbery, the Defendant assaulted any person, or put in jeopardy the life of any person by the use of a dangerous weapon or device.

Count 2 (Use of a Firearm During and in Relation to a Crime of Violence)

e. First, that the Defendant committed a crime of violence for which he might be prosecuted in a court of the United States—here, Armed Bank Robbery; and

f. Second, that the Defendant knowingly used or carried or brandished a firearm during and in relation to the commission of, or knowingly possessed a firearm in furtherance of, the crime charged in the associated Count.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. §§ 2113(a), (d) | N/A | 25 years | 5 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 924(c)(1)(A)(ii) | 7 years | Life | 5 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If

the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

     e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

     f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

     g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

     h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

Count 1 (Armed Bank Robbery)

a. **Offense of Conviction:** The offense of conviction is the bank robbery of a branch of PNC Bank that occurred on March 18, 2018, as described in the Statement of Facts. This Office and the Defendant agree that the applicable base offense level is 20 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a). This Office and the Defendant further agree that there is an increase of 2 levels, pursuant to U.S.S.G. § 2B3.1(b)(1), because the property of a financial institution was taken, and the taking of such property was an object of the offense.

b. **Relevant Conduct:** The Statement of Facts specifically establishes the commission of two additional bank robberies. Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for each of these offenses is 20. There is an increase of 2 levels, pursuant to U.S.S.G. §2B3.1(b)(1), because the property of a financial institution was taken, or the taking of such property was an object of every offense. In one of the robberies, the Defendant stated that he had a weapon and threatened to kill the teller. This conduct warrants a 2 level increase pursuant to § 2B3.1(b)(2)(F), because a threat of death was made.

c. Thus, the adjusted offense level for two of the three groups of relevant conduct is 22, and for the third group, the adjusted offense level is 24.

d. **Combined Offense Level:** Pursuant to U.S.S.G. §3D1.4, counting one (1) Unit for the bank robbery of conviction and two (2) Units for the additional bank robberies established by the Statement of Facts results in a total of three (3) Units. Thus, the combined offense level is determined by increasing the highest offense level (24) by 3 levels. Thus, the combined offense level is 27.

e. Acceptance of Responsibility: This Office does not oppose a two level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

Count 2 (Use of a Firearm During and in Relation to a Crime of Violence)

f. This Office and the Defendant further agree that pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute—seven years' imprisonment.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range. *The Defendant reserves the right to argue for a downward departure for over-representation of criminal history.* (KTN)(RR)

Obligations of the Parties

9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional

Rev. August 2018

6

challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.        The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        ii.        This Office reserves the right to appeal any sentence below a statutory minimum.

        c.        The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.        The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

        a.        Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following item that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: a Charter Arms Pit Bull 9 mm Revolver, S/N: 1067533.

        b.        The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

        c.        The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

        d.        The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement,

and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

12. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

13. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Restitution

14. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation, which the parties stipulate is at least $6,300.00. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this

provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Court Not a Party

15. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

16. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Paul A. Riley
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12-12-2018
Date

Reginald Ricks

Rev. August 2018

9

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/12/18
Date

Katherine Tang Newberger, Esq.

Rev. August 2018

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Reginald Kelso Ricks, age 29, is a resident of Washington, D.C. From November 4, 2017 through March 30, 2018, Ricks robbed three PNC Bank branches located within Giant grocery stores in Prince Georges County, Howard County, and Baltimore City, Maryland. Each of the three bank robberies is described in further detail below.

On November 4, 2017, at approximately 5:33 p.m., Ricks entered the PNC Bank located within a Giant grocery store located at 3500 Crain Highway in Bowie, Maryland. He was wearing glasses that had a clear frame, a grey jacket, and blue latex gloves. He sat down at the teller's desk and handed her a note that said "All 50s and All 100's." He also told the teller not to give him "dummy packs" and threatened to hurt her if she did not comply with his demands. The teller complied and gave the Ricks $4250. Ricks then fled the bank on foot.

Ricks would go on to use some of this stolen money to buy expensive clothing and shoes.

On December 30, 2017, at approximately 1:16 p.m., Ricks entered the PNC Bank branch located in the Giant grocery store at 7200 Cradlerock Way, Columbia, Howard County, Maryland 21045. He was wearing a camouflage type shirt covered by a bright orange safety style vest, a gray hat, black glossy boots or shoes, and dark sunglasses. He approached the teller counter with several cash bills in his black gloved hands, presented a note to the teller, and demanded all the $50 and $100 bills.

The note stated: "This is a bank robbery. Don't do anything stupid. I have a weapon and I will use it." Ricks then leaned over the counter and stated that he had "a weapon and wasn't afraid to use it" and made motions toward his waist implying he had a weapon. The teller complied and handed Ricks $400. Ricks then fled.

The teller and one of his coworkers attempted to pursue Ricks after he left the store to take pictures of him. Ricks then threatened them, stating, "I'm gonna fuck you up. I'm gonna come back and kill you both." The bank employees then ran back into the grocery store.

Ricks then left the area in a new red Dodge Challenger that he had recently purchased and which was parked in the shopping center's parking lot.

On March 18, 2018 at approximately 2:19 pm, Ricks entered the PNC bank branch located in the Giant grocery store located at 6620 Reisterstown Rd., Baltimore, Maryland 21215. He was wearing a dark blue Polo pullover sweater over an orange striped shirt, dark blue pants, and a grey or white skullcap. He wore black latex gloves. Ricks approached the teller and asked her about opening an account. He then sat down at the teller's desk, unzipped the blue folder that he was carrying, and displayed a silver revolver—pointing it in the direction of the teller. At the same time, he told the teller "give me all the 100s and 50's, or I'll blow your head off!"

The teller then got up and walked towards her teller station. She pressed the silent alarm and gave Ricks a GPS tracker tucked in $250 (both of which were later found discarded in the

grocery store), along with $1650. Ricks then fled.

On April 13, 2018, law enforcement executed a federal search and seizure warrant at Rick's residence at 410 Taylor Street #23B Northeast, Washington DC 20017. They seized Ricks' and his girlfriend C.W.'s phones, a laptop computer, and 9 mm ammunition from the closet in the master bedroom. They also obtained written to consent to search Wilson's car. In the trunk of the car, they located a silver 9mm revolver a silver Charter Arms revolver (SN: 1067533) loaded with three rounds in a duffel bag and a black latex glove.

The gun matched the description given by the teller in connection with the Baltimore City robbery. Law enforcement did a trace on the gun; it was purchased in Indiana and registered to Ricks. A black latex glove—similar to the one found in Wilson's trunk—was used in connection in the Baltimore City robbery.

Ricks' phone contained numerous pictures of him, including pictures of him wearing (1) an orange striped shirt identical to the one worn during the March 18, 2018 robbery; (2) glasses with clear frames identical to the ones worn during the November 4, 2017 robbery; and (3) a yellow striped safety vest, similar to (though not the same as) the one worn during the December 30, 2017 robbery. The phone likewise reflected the visit to a website concerning "4622 Wilkens Avenue" in Baltimore, Maryland on March 9, 2018—a little more than a week before the March 18, 2018 robbery. There is a PNC Bank within a Giant store located at that address.

Ricks also used C.W.'s phone to conduct research concerning bank robberies, bank robbers, and bank robbery investigations around the time of the bank robberies discussed above. For instance, the phone reflected the following searches: "howard county robbery," "Armed Security facts," "when do armed guards shoot," "Maryland armed security facts," and "bank robbery in maryland today." It also reflected visits to FBI webpages concerning "Bank Robbers Nationwide" and certain "Unknown Bank Robbers" and visits to a webpage concerning "Bank Robbing Tips."

At the time of each of the bank robberies discussed above, the deposits of each of the banks were insured by the Federal Deposit Insurance Corporation.

SO STIPULATED:

_____
Paul A. Riley
Assistant United States Attorney

_____
Reginald Kelso Ricks
Defendant

_____
Katherine Tang Newberger, Esq.
Counsel for Defendant

2